## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is made and entered into between Nathaniel Tate ("Tate"), an individual, and NOTS Logistics, L.L.C. ("NOTS Logistics"), a corporation, and TKT, Inc., ("TKT"), a corporation, through their undersigned representatives, and is made in light of the following circumstances:

### RECITALS

The following recitals are not intended to be factual admissions, but are solely intended to be recitals.

WHEREAS, Tate is a former manager for TKT and NOTS Logistics who voluntarily terminated his employment on or about January 20, 2012;

WHEREAS, on August 29, 2012, Tate filed a Complaint in the Superior Court of Gordon County, Georgia, *Nathaniel Tate v. NOTS Logistics, L.L.C. and TKT, Inc. d/b/a Norrenberns Truck Service*, Civil Action File No. 12CV60849, alleging a wage and hour claim under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"), as well as a breach of contract claim (hereinafter the "State Court Action");

WHEREAS, on October 9, 2012, NOTS Logistics and TKT timely removed Plaintiff's State Court Action to the United States District Court for the Northern District of Georgia, *Nathaniel Tate v. NOTS Logistics, L.L.C. and TKT, Inc. d/b/a Norrenberns Truck Service*, Civil Action File No. 4:12-CV-00238-HLM-WEJ (hereinafter the "Lawsuit");

WHEREAS, NOTS Logistics and TKT have denied, and continue to deny, any liability whatsoever to Tate for claims under the FLSA or for any other claims, including those claims or theories alleged by Tate in the Lawsuit;

1

EXHIBIT 1

WHEREAS, the Parties hereto (Tate, NOTS Logistics, and TKT may be referred to collectively as the "Parties"), without any admission of liability, are mutually desirous of settling with finality and releasing any and all FLSA claims and any and all other claims which were asserted, or which could have been asserted, by Tate in his Lawsuit;

WHEREAS, NOTS Logistics and TKT, by entering into this Agreement, do not admit any fault or liability in any amount whatsoever to Tate.

THEREFORE, in consideration of the foregoing, and payment to Tate of the sum hereinafter described, and the covenants, promises, conditions, and agreements set out hereinafter, Tate and NOTS Logistics agree to the following:

1. **Release of FLSA Claims**: Tate, with full understanding of the contents and legal effect of this Agreement, hereby releases and forever discharges NOTS Logistics and TKT, and their respective owners, parents, subsidiaries, divisions, related corporations, lessees and lessors, predecessors, directors, servants, officers, agents, employees, affiliates, successors and assigns (collectively referred to hereinafter as "Released Parties") of and from any and all claims under the FLSA, known and unknown, which Tate now has or has ever had. Tate also expressly waives any right to damages or other legal or equitable relief awarded by any governmental agency or court relating to FLSA claims against the Released Parties based on events occurring prior to the effective date of this Agreement.

2. **Release of All Other Claims**: Aside from the FLSA claims released above, Tate, with full understanding of the contents and legal effect of this Agreement, hereby releases and forever discharges the Released Parties of and from any and all rights of actions, claims, demands, wage claims, contract claims,

statutory claims, debts, attorneys' fees, costs, and other expenses, known and unknown, which Tate now has or has ever had. Included in the foregoing, but not in limitation thereof, Tate specifically releases the Released Parties from any and all claims, arising under federal, state, and local laws, or any other authority, pertaining to conditions of employment, wages, or discrimination in employment based on race, color, national origin, religion, sex, disability, family or medical leave, age, or veteran status, including Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Family and Medical Leave Act, the Americans With Disabilities Act, the Age Discrimination in Employment Act, the Older Workers Benefits Protection Act, the Equal Pay Act of 1963, the Occupational Safety and Health Act, the Rehabilitation Act of 1973, the Uniformed Services Employment and Reemployment Rights Act, the Consolidated Omnibus Budget Reconciliation Act, the Genetic Information Nondiscrimination Act and from any and all claims statutory or common-law arising out of his employment with TKT and NOTS Logistics, including breach of contract and tort claims, including, but not limited to, intentional infliction of emotional distress and wrongful discharge.

  Tate understands that this is a general and complete release and that he retains no right to pursue any claim against any other person or entity for any injuries and/or damages claimed to arise in any way from his employment relationship with TKT and/or NOTS Logistics. Tate also expressly waives any right to damages or other legal or equitable relief awarded by any governmental agency or court relating to any lawsuit, complaint, charge, or other proceeding (regardless by whom filed), that is pending or that is filed in the future based on events occurring prior to the effective date of this Agreement.

3. **Dismissal of Action:** Tate acknowledges and agrees that the Parties will submit this Agreement after execution for judicial approval by the Court and that, should the Court approve the Agreement, the Parties will draft and file a Stipulation of Dismissal with Prejudice dismissing all claims within seven (7) calendar days of the Court's approval of the Agreement or within the time allowed by the Court, whichever is longer.

4. **Full and Final Release:** It is understood and agreed by Tate that this Agreement constitutes a full and final release covering all unknown, undisclosed and unanticipated losses, wrongs, injuries, debts, claims or damages to Tate which may have arisen, or may arise from any act or omission by the Released Parties prior to the date of execution of this Agreement.

5. **No Known Additional Claims:** It is further understood and agreed that the Parties are currently unaware of any claim, right, demand, debt, action, obligation, liability, or cause of action that Tate may have against the Released Parties, which has not been released by Tate in this Agreement.

6. **No Liability:** It is further understood and agreed that the Released Parties expressly deny any and all liability for any and all claims that Tate may have against them. This Agreement is a compromise settlement of disputed claims, and neither this Agreement itself, nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission of liability or responsibility for any wrongdoing of any kind.

7. **No Filing Additional Actions:** Tate acknowledges and agrees that, at no time subsequent to the execution of this Agreement, will he file, maintain, cause, or knowingly permit the filing of any charge, claim or action of any kind which Tate may now have, have ever had, or may in the future have for any act

which transpired prior to the execution of this Agreement, against the Released Parties, which is based in whole or in part on any matter released in Paragraphs 1 and 2.

8. **Non-Disparagement:** Tate agrees that he will refrain from publicly or privately directing any disparaging or defamatory remarks toward or complaints about TKT or NOTS Logistics and/or any companies affiliated with TKT or NOTS Logistics, and/or their respective officers, management, employees, suppliers, and products, in their capacities as such. Tate understands and agrees that this restriction prohibits him from making disparaging or defamatory remarks toward or complaints about TKT or NOTS Logistics and/or any companies affiliated with TKT or NOTS Logistics, and/or their respective officers, management, employees, suppliers, or products in their capacities as such (1) to any member of the general public, including, but not limited to, any customer or supplier of TKT or NOTS Logistics and/or any companies affiliated with TKT or NOTS Logistics; (2) to any current or former officer, manager or employee of TKT or NOTS Logistics and/or any companies affiliated with TKT or NOTS Logistics; (3) to any member of the press or other media; (4) to any law firm; or, (5) on a voluntary basis, to any governmental agency, local, state or federal. TKT and NOTS Logistics agree that they will instruct their managers and supervisors to refrain from publicly or privately making any disparaging or defamatory remarks regarding Tate.

9. **Payment:** As consideration for Tate's promises, covenants, and releases contained herein, TKT and NOTS Logistics agrees to pay Tate a total payment of Twenty-Four Thousand Dollars and 00/100 ($24,000.00), which amount will be paid out in 2 checks made payable as follows: (1) one check made payable to Nathaniel Tate for the gross amount of Eighteen Thousand Dollars and

00/100 ($18,000.00) subject to and less any applicable withholding required by law, and (2) one check made payable to Tate's attorneys of record, Brunt & Hood, LLC and Vaughn & Clements, LLC, for Six Thousand Dollars and 00/100 ($6,000.00) for which TKT and/or NOTS Logistics shall issue a Form 1099 at the appropriate time. TKT and NOTS Logistics agree to deliver the check made payable to Tate within 30 days of the entry of an Order by the Court approving the Agreement. TKT and NOTS Logistics agree to deliver the check made payable to Brunt & Hood, LLC and Vaughn & Clements, LLC within 60 days of the entry of an Order by the Court approving the Agreement. In light of the circumstances, the Parties stipulate that said payments are an appropriate apportionment of Tate's claims, including Tate's FLSA claims for back pay and liquidated damages. Tate acknowledges that neither TKT nor NOTS Logistics has made any representation, warranty, or guarantee with respect to whether the payment made to Tate pursuant to this Agreement or any portion thereof is or is not subject to levy or assessment by any governmental authority. Tate further acknowledges and agrees that he shall be solely responsible for the payment of any taxes and/or penalties that may be assessed by any taxing authority against him.

The Parties acknowledge and agree that the consideration provided in this Paragraph is given, in part, for (1) Tate's release of his claims under the FLSA and (2) Tate's general release of all other claims. To the extent a breakdown of the total payment is required, the Parties acknowledge and agree that $23,750 of the $24,000 total payment to Tate is expressly for the release of his FLSA claim, and the remaining $250 of the $24,000 total payment to Tate is expressly for the release of all other claims, as well as any additional covenants, promises, or agreements made herein. The Parties expressly agree that this apportionment of

6

the total settlement amount is fair, reasonable, and sufficient under the circumstances of this case.

10. **Attorneys' Fees**: Each of the Parties shall bear all attorneys' fees and litigation costs arising from the actions of its own counsel in connection with the Lawsuit, the negotiation and execution of this Agreement, the matters referred to herein, the filing of the Joint Motion for Judicial Approval of Settlement Agreement and its attachments, and all other related matters. Under no circumstance may any party hereto be responsible for the payment of any attorneys' fees or litigation costs of another party hereto.

11. **No Rehire or Reinstatement**: Tate agrees that he (a) will not be eligible for rehire by TKT, NOTS Logistics, or any related entity; (b) will not apply for any position with TKT, NOTS Logistics, or any related entity; and (c) hereby waives and releases any right to application for employment, re-employment or reinstatement with TKT, NOTS Logistics, or any related entity, in any capacity.

12. **Authority to Execute Agreement**: Tate represents and warrants that no person other than himself had or has any claims to any interest in the subject matter of his Lawsuit; that he has the sole right and exclusive authority to execute this Agreement; and that he has not sold, assigned, transferred, conveyed or otherwise disposed of any claim or demand relating to any matter covered by this Agreement.

13. **Enforcement of Agreement**: The prevailing party in an action to enforce this Agreement may recover from the opposing party its reasonable attorneys' fees and costs.

14. **Merger:** The Parties agree that this Agreement constitutes the entire agreement and the only agreement between the Parties, and any representations or promises not contained herein shall not be binding upon or imputed to the Parties. The Parties further understand and agree that this Agreement may not be altered, amended, modified, or otherwise changed in any respect or particular whatsoever, except by a writing duly executed by Tate, TKT, and NOTS Logistics, or their duly authorized representatives, and further acknowledge and agree that they will not make any claim that this Agreement has been orally altered or modified in any respect whatsoever. The Parties agree that this Agreement is the final embodiment of the agreement between them and shall supersede all prior written and oral agreements, understandings, and/or discussions by, between, or among the Parties relating to it or in any way connected with the subject matters of this Agreement.

15. **Non-assignability:** The Parties agree that this Agreement shall not be assignable or transferable by Tate, but shall be freely assignable or transferable by TKT and/or NOTS Logistics.

16. **Effect of Court's Rejection of Agreement:** The Parties agree that in the event the Court declines to approve this Agreement, the terms, conditions, and provisions contained herein are null, void, and without any legal effect.

17. **Severability:** The Parties further agree that in the event any one or more of the provisions of this Agreement shall be or become invalid, illegal, or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not be affected thereby.

18. **Successors:** The Parties agree this Agreement shall inure to the benefit of and be binding upon the respective Parties to this Agreement, their successors, trustees, representatives, heirs, administrators, and executors forever.

19. **Construction:** The Parties agree that this Agreement shall be construed and governed by the laws of the State of Georgia.

20. **Headings:** The headings for each paragraph are for convenience only and shall not be utilized in construing the meaning or intent of any of the terms of this Agreement.

21. **Counterparts and Copies:** This Agreement may be signed in counterparts, and all so executed counterparts shall constitute one agreement which shall be binding on all of the parties hereto, notwithstanding that all of the parties may not have each signed the same signature page. In addition, copies of this Agreement shall have the same force and effect as original documents.

22. **ACKNOWLEDGEMENT:** TATE REPRESENTS AND ACKNOWLEDGES THAT HE HAS BEEN INSTRUCTED IN WRITING TO CONSULT WITH AN ATTORNEY REGARDING THIS AGREEMENT, THAT TATE HAS HAD AN OPPORTUNITY TO HAVE HIS ATTORNEY REVIEW THIS AGREEMENT PRIOR TO ITS EXECUTION, AND THAT TATE HAS BEEN PROVIDED WITH A PERIOD OF AT LEAST TWENTY-ONE (21) DAYS WITHIN WHICH TO CONSIDER THIS AGREEMENT. TO THE EXTENT TATE TAKES LESS THAN TWENTY-ONE (21) DAYS TO CONSIDER THIS AGREEMENT BEFORE SIGNING IT, TATE ACKNOWLEDGES THAT HE HAD SUFFICIENT TIME TO CONSIDER THIS AGREEMENT WITH LEGAL COUNSEL AND THAT HE VOLUNTARILY AND KNOWINGLY WAIVES ANY ADDITIONAL TIME TO CONSIDER THIS AGREEMENT. TATE FURTHER REPRESENTS AND ACKNOWLEDGES THAT HE HAS A PERIOD OF AT LEAST SEVEN (7) DAYS FOLLOWING THE EXECUTION OF THIS

AGREEMENT TO REVOKE THIS AGREEMENT, AND THE PARTIES ACKNOWLEDGE AND AGREE THAT THIS AGREEMENT SHALL NOT BECOME EFFECTIVE OR ENFORCEABLE UNTIL THE SEVEN (7) DAY REVOCATION PERIOD HAS EXPIRED. NOTICE OF REVOCATION MUST BE MADE IN WRITING, SENT BY FACSIMILE TRANSMISSION, AND RECEIVED BY TKT AND NOTS LOGISTICS' COUNSEL, STEVEN G. HOPKINS AT CONSTANGY, BROOKS & SMITH, LLP, NO LATER THAN 5:00 P.M. EASTERN TIME ON THE SEVENTH CALENDAR DAY AFTER TATE EXECUTES THIS AGREEMENT.

TATE REPRESENTS AND ACKNOWLEDGES THAT HE HAS READ THIS AGREEMENT IN ITS ENTIRETY, FULLY UNDERSTANDS ITS CONTENT AND EFFECT, AND WITHOUT DURESS OR COERCION, KNOWINGLY AND VOLUNTARILY AGREES TO ITS TERMS AND CONDITIONS. TATE FURTHER ACKNOWLEDGES AND REPRESENTS THAT THE CONSIDERATION PROVIDED IN EXCHANGE FOR THIS AGREEMENT AS DESCRIBED ABOVE IS OF VALUE TO HIM AND IS NOT ANYTHING TO WHICH HE IS ALREADY ENTITLED.

| NATHANIEL TATE | TKT, INC. |
|---|---|
| _/s/ Nathaniel Tate_ <br> NATHANIEL TATE | By: _/s/_ |
| Date: 3-26-13 | Title: President |
| | Date: 3-29-13 |

[Additional Signature Page Follows]

10

NOTS LOGISTICS, L.L.C.

By: _____

Title: PRESIDENT

Date: 3/29/13